UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ARMIN SADARI MASIHI,

                Petitioner,

      v.

FERETI SEMAIA, et al.,

                Respondents.

Case No. 5:26-cv-01943-PD

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is the counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by Armin Sadari Masihi ("Petitioner") asserting four grounds for relief: (1) unlawful revocation of release; (2) violation of procedures for revocation of release; (3) unlawful detention where removal is not reasonably foreseeable; and (4) unlawful removal to a third country. Dkt. No. 1 at 21–24.[1] Respondents filed an answer stating that they are not presenting an opposition argument at this time. Dkt. No. 9.

---

[1] The Court uses the page numbers inserted into the pleadings by the Court's electronic filing system.

## I.  Background

The following information is obtained from the Petition, to which Respondents do not object.  Petitioner is a citizen of Iran who was born in Germany in 1990 to parents who were Iranian refugees.  Dkt. No. 1, Petition ¶¶ 2, 20.  Petitioner entered the United States in 2005 when he was fifteen years old.  He traveled on his mother's passport and has never held a passport from any country.  *Id.* ¶ 21.  When Petitioner was eighteen, he was arrested and convicted of misdemeanor burglary for stealing a laptop out of a car.  According to Petitioner, since then, he has never committed or been arrested for a crime. [2]  *Id.* ¶ 26.

In 2012, when Petitioner was twenty-two years old, he was ordered removed to Iran but was granted withholding of removal.[3]  *Id.* ¶ 22.  Neither the government nor Petitioner appealed the order of withholding of removal.  On November 7, 2012, Petitioner was called into the Immigration and Customs Enforcement ("ICE") office and placed on an order of supervision ("OSUP").  *Id.* ¶ 23; *see* Dkt. No. 1-2 (Petitioner's OSUP).  For the next few years, Petitioner appeared for check-ins pursuant to his OSUP.  In approximately 2016, an ICE officer told Petitioner he did not have to continue to appear but had to continue renewing his work permit and informing ICE if he intended to travel outside of California for more than two weeks.  Dkt. No. 1 ¶ 24.  Petitioner continued to renew his work permit every year and appeared for his biometrics when instructed.  *Id.* ¶ 25.  While released,

---

[2] Petitioner was sentenced to probation and three days in jail.  He performed community labor and paid restitution to the owner of the car.  Dkt. No. 1 ¶ 26. Petitioner does not state what effect, if any, the burglary conviction had on his immigration status at that time.

[3] According to the Automated Case Information for Petitioner on the Executive Office for Immigration Review webpage, he was ordered removed on September 26, 2012, and a motion to reopen was received on April 16, 2026.  *See* https://acis.eoir.justice.gov/en/.

Petitioner has worked as an In-Home Supportive Service provider for his mother and father, who are now United States citizens and who require assistance with medication and physical activities. *Id.* ¶ 27. He also has a full-time job as a Project Manager for J.T. Construction Group. *Id.* ¶ 28.

On March 5, 2026, Petitioner was at the Burbank Airport about to board a flight to Las Vegas, Nevada, for a business trip when he was approached by ICE officers. They handcuffed Petitioner and told him they were going to remove him to a third country. *Id.* ¶ 29. The officers also told Petitioner that he had not checked in pursuant to his OSUP. Petitioner informed the officers about the conversation he had with ICE in 2016 about not having to make regular appearances. The officers responded that they had probably sent him a letter and he had ignored it. Petitioner responded that he had filed for work permits every year and was not hiding. *Id.*

Petitioner was taken to an ICE office in Camarillo where he was handed a piece of paper called "Notice of Revocation of Release" (the "Notice"). *Id.* ¶ 30; *see* Dkt. No. 1-3 (the Notice). The Notice, which is signed and dated March 5, 2026, states in relevant part that: "Your release on the order of supervision (OSUP) issued to you on or about November 7, 2012 is hereby revoked. . . . Your release has been revoked pursuant to 8 C.F.R. § 241.4(l), for the following reason(s)". *See* Dkt. No. 1-3 at 1. Below this sentence are various reasons for revocation, but none are checked. The Notice also states in relevant part, "Your release has been revoked pursuant to 8 C.F.R. § 241.13(i), for the following reason(s): . . . Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future. . . . On September 26, 2012, you were ordered removed to Iran, but you were

3

granted withholding of removal from Iran.  Your case is under review for removal to an alternate country.[4]  *Id.* at 1–2.

The Notice further states that "[o]n March 5, 2026, you will be afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation.  You may submit any evidence or information you wish to be reviewed in support of your release."  *Id.* at 2.

According to Petitioner, the ICE officers did not ask him why his release should not be revoked and instead gave him a copy of a document titled "Alien Informal Interview".  Dkt. No. 1 ¶ 31.  The Alien Informal Interview document reflects the interviewing ICE officer is "S. Becker" and states: On March 5, 2026, I conducted an initial informal interview of the detainee listed above in order to afford the alien an opportunity to respond to the reasons for revocation of his or her order of supervision states in the notification letter.  At the interview, the alien made the following oral response regarding the reasons for revocation: no statement given."  *See* Dkt. No. 1-4.  However, according to Petitioner, the ICE officers did not provide him an informal interview where he could submit evidence or information to support his release.  Dkt. No. 1 ¶ 31.  Instead, the ICE officers asked about his birth certificate to Germany; Petitioner responded that he had no idea where it was and explained that he is not a citizen of Germany because he left the country before he could apply for German citizenship.  *Id.* ¶ 34.  According to Petitioner, one ICE officer told Petitioner he should agree to be deported to Germany or else he would be deported to a third world country.  He did not know how to answer the remaining questions from the officers, who would not let him call his attorney or his mother.  *Id.* ¶ 33.  Petitioner alleges he was scared and "did not understand the barrage of questions."  *Id.* ¶ 32.

---

[4] The Notice does not allege that Petitioner violated a condition of his release.  Dkt. No. 1-3 at 1.

Thereafter, Petitioner was transferred to the Adelanto ICE Processing Center, where he remains detained.  *Id.* ¶ 35.  Since his detention, Petitioner has not been officially interviewed by an ICE officer.  ICE Officer Gomez showed Petitioner applications to sign to go to Germany; Petitioner asked to have his attorney review the papers, but Officer Gomez never gave him a copy or offered to send them to his attorney.  *Id.* ¶ 36.  Petitioner has not received a notice of intent to remove him to any country.  *Id.* ¶ 37.

## II.   Discussion

### A.   Re-Detention In Violation of Due Process and INA Regulations

#### 1.   No Showing of Changed Circumstances

Petitioner states he was ordered removed to Iran but also granted withholding of removal.  *See* Dkt. No. 1, Petition ¶ 22.  "[Noncitizens] granted withholding of removal under section 241(b)(3) of the [Immigration and Nationality Act] or withholding or deferral of removal under the Convention Against Torture who are otherwise subject to detention are subject to the provisions of [Part 241 of Title 8 of the Code of Federal Regulations]."  8 C.F.R. § 241.4(b)(3).  Those regulations provide that, if a noncitizen is not removed within 90 days, and there is no significant likelihood of removal, that noncitizen may be released under an OSUP.  8 C.F.R. § 241.13.  Once a noncitizen is released under an OSUP, 8 C.F.R. § 241.13(i)(2) provides for a revocation of that release when "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  "ICE's own regulations thus place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future."  *Sun v. Noem*, No. 3:25-CV-02433-CAB-MMP, 2025 WL 2800037, at *2 (S.D. Cal. Sept. 30, 2025).

Here, there is no showing of changed circumstances. The Notice handed to Petitioner when he was arrested by ICE stated that his release was revoked under 8 C.F.R. § 241.13(i) because of changed circumstances but also stated that his case was "under review for removal to an alternate country." *See* Dkt. No. 1-3 at 1–2. The fact that his case was merely "under review", and no alternate country was identified strongly suggests that there was no significant likelihood that he would be removed in the reasonably foreseeable future prior to revocation. Respondents proffer no evidence that Petitioner violated any condition of his release or that there is a significant likelihood that he may be removed in the reasonably foreseeable future.

## 2. Insufficient Opportunity to be Heard

Upon revocation, the noncitizen is entitled to be "notified of the reasons for revocation of his or her release" and to have "an opportunity to respond to the reasons for revocation stated in the notification" through an informal interview "promptly" after his return to ICE custody. 8 C.F.R. § 241.13(i)(3). This opportunity to respond must allow the noncitizen to "submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.* Further, the "revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.* Similarly, 8 C.F.R. § 241.4(l) provides in relevant part that any noncitizen released under an order of supervision who violates a condition may be returned to custody, and "[u]pon revocation, . . . will be notified of the reasons for revocation of his or her release or parole. The [noncitizen] will be afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for

6

revocation stated in the notification." 8 C.F.R. § 241.4(l)(1). *See Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988 at *5–6 (C.D. Cal. Aug. 28, 2025) (finding that government agencies are required to follow their own regulations and finding that a petitioner is likely to succeed on the merits of his claim where the government did not properly revoke his release pursuant to 8 C.F.R. §§ 241.4 and 241.13).

Petitioner was not provided with sufficient notice and opportunity to be heard as to the revocation of his release. This is required by the Due Process Clause of the Fifth Amendment and the relevant regulations, 8 C.F.R. § 241.13(i)(3).

"In order to analyze a procedural due process claim, [courts] engage in a two-step analysis" which first "determine[s] whether the [detainee] was deprived of a constitutionally protected liberty or property interest" and then "examine[s] whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). The first step is clearly satisfied. Petitioner has a constitutionally protected liberty interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The next step is to determine whether Petitioner was afforded sufficient procedural protections prior to his detention. At a minimum, due process requires that a noncitizen have the opportunity to respond to the allegations that form the basis for the planned detention. *Cf. United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014) (in the expedited removal context, a noncitizen has the "fundamental due process right[ ]" to receive "notice of the charge" they face and an "opportunity to respond to that charge), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103

7

(2020).  While Petitioner received a notice stating that his OSUP was revoked due to changed circumstances because ICE was reviewing his case for removal to an alternate country, no specific alternate country was identified.  Courts in this district have found that such vague, boilerplate statements provide insufficient notice.  *See Cruz v. Rios, et al.*, No. EDCV 26-01374-MWF (DSR), 2026 WL 973367 at *2–3 (C.D. Cal. Apr. 8, 2026) (finding that notice that ICE was seeking travel documents to effect expeditious removal to an unnamed third country lacked concrete facts and therefore did not provide meaningful opportunity for petitioner to understand or contest the basis for revocation). Therefore, Petitioner was unable to make any meaningful response as to why he should not be detained.

Further, Petitioner was not provided with a pre-deprivation hearing before a neutral decisionmaker, which is "one of the most basic due process protections."  *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) ("The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property.").

To determine whether the Due Process Clause requires a pre-deprivation hearing, courts weigh "the private interest that will be affected by the official action," "the risk of an erroneous deprivation ... and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner's liberty interest is substantial.  He has resided in the United States for more than twenty years-- since 2005, when he was fifteen years old. Dkt. No. 1, Petition ¶ 21.  He works as an In-Home Supportive Service

8

provider for his two parents, who require assistance with mediation and physical activities, while also working full-time as a Project Manager for a construction company. *Id.* ¶ 27–28. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (cleaned up) (petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[ ] with family and friends to form the enduring attachments of normal life"). The length of time in which Petitioner has been on supervised release also confirms his private interest in continued release. *See Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025) (a noncitizen who was released in 2018 and re-detained in 2025 had a "strong private interest" in continued release due to "the length of time he was on supervised release, as well as [his] ties to his community."); *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

The risk of erroneous deprivation is also significant. Without the "additional procedural safeguard of a pre-detention hearing," Respondents would be able to "revoke a release determination at any time without either a hearing before or additional oversight from a neutral adjudicator." *Im v Semaia*, 5:25-cv-027333-JAK-E, 2025 WL 4474995, at * 6 (C.D. Cal. Oct 30 2025) (quoting *Sun v. Santacruz*, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025)); *see also Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *7 (N.D. Cal. July 17, 2025) (a pre-detention hearing by a neutral arbiter protects against erroneous deprivation because "each of [ICE's post-detention] procedures is essentially no more than a request to ICE's arresting agents or their supervisors at headquarters to reconsider the agency's unilateral detention decision"). Here,

Petitioner was arrested at an airport, handed a notice stating that his case was under review for removal to an unnamed third country, and then brought to an ICE Office and asked multiple questions which Petitioner states he did not understand.  Dkt. No. 1 ¶¶ 29–32.  When questioned about his German birth certificate, Petitioner responded he did not know its whereabouts and regardless, explained that he is not a citizen of Germany since he had left that country before he could apply for citizenship.  *Id.* ¶ 34.  The ICE officers also did not allow Petitioner to call anyone during this encounter, including his mother and attorney.  These events demonstrate that Petitioner had no meaningful opportunity to "submit any evidence or information" showing there was no significant likelihood of his removal in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(3).  Therefore, the Notice and subsequent questioning by ICE did not afford Petitioner with a meaningful opportunity to respond to Respondents' reason for revocation in accordance with 8 C.F.R. § 241.13(i)(3).

Finally, ICE does not have a material interest in re-detaining Petitioner without a hearing.  Civil immigration detention is only permitted to prevent flight or protect against danger to the community.  *See Zadvydas*, 533 U.S. at 690.  Here, ICE previously determined that Petitioner was neither a flight risk nor a danger to the community when it released him under an OSUP in 2012.  Petitioner has been under supervision since the issuance of that order.  While an arresting ICE officer told Petitioner that he failed to check-in pursuant to his OSUP, that reason was not listed on the Notice.  Furthermore, Petitioner alleges that ICE informed him in 2016 that he did not have to attend in-person check-ins.  Petitioner's family ties and connections are substantial and support a determination that he is not a flight risk.  Further, there is no evidence proffered that he has engaged in any criminal conduct since his conviction roughly seventeen years ago.

10

Accordingly, there is not a basis to find that his release would present a risk to the community.  Under these circumstances, the Government's interest in re-detaining Petitioner without a hearing is very modest.  *See Zakzouk v. Becerra*, No. 25-CV-06254 (RFL), 2025 WL 2097470, at *3 (N.D. Cal. July 26, 2025).

For the reasons set forth above, the Court finds there is no showing of changed circumstances sufficient to warrant a revocation of release, that Petitioner was not provided sufficient notice and an opportunity to be heard, and that Respondents failed to follow the procedures set forth in 8 C.F.R. §§ 241.4(l) and 241.13(i).  Therefore, the Court grants the Petition on Claims One and Two, which allege that Respondents violated the procedures for revocation of his release.  Dkt. No. 1 at 22–23.

### B.    Third Country Removal

Claim Four argues that "to the extent that Respondents are detaining Petitioner with the intent to remove him to a third country without notice or opportunity to demonstrate that he is a particular risk of torture or persecution to that third country, the detention is unlawful."  Dkt. No. 1, Petition ¶ 82.  Petitioner asks the Court to enter an order enjoining Respondents from removing Petitioner to a third country without following specific procedures.  *See id.* at 26.

The Fifth Amendment entitles noncitizens to due process in removal proceedings, which includes adequate notice and opportunity to be heard. *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Trump v. J. G. G.*, 604 U.S. 670, 673 (2025).  "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).

11

The Immigration and Nationality Act ("INA") and the implementing regulations establish mandatory procedures designed to safeguard these rights.  8 U.S.C. § 1231(b)(3).  Under 8 U.S.C. § 1231(b)(3), the government may not remove a noncitizen to any country where the individual's life or freedom would be threatened on account of a protected ground, and parallel protections apply under the Convention Against Torture regulations ("CAT").  8 U.S.C. § 1231(b)(3).  Despite the use of the word "may," this provision establishes a mandatory prohibition, not a discretionary one.  *See Camposeco-Montejo v. Ashcroft*, 384 F.3d 814, 819 (9th Cir. 2004); *Delgado v. Holder*, 648 F.3d 1095, 1101 (9th Cir. 2011) (holding that "withholding of removal is not discretionary" and that the Attorney General may not remove a noncitizen to a country where his life or freedom would be threatened on a protected ground).

"Courts have repeatedly held that due process is violated where third-country removal procedures fail to provide adequate notice and a meaningful opportunity to raise fear-based claims before removal is executed." *Quijada v. Semaia, et al.*, No. 5:26-cv-01540-AB-DSR, 2026 WL 1182196 at *7 (C.D. Cal. Apr. 20, 2026) (collecting cases).

Here, Respondents detained Petitioner to effectuate a removal to a third country, likely Germany, but as discussed in this Order, failed to follow due process and the applicable regulations in revoking his release.  Since his most recent arrest, ICE has repeatedly told Petitioner they intend to remove him to a third country: he was told this when he was arrested at the airport, in the Notice, during his questioning at the ICE Office (including a threat that if he did not agree to be removed to Germany, he would be removed to a third world country), and while in detention when an officer attempted to have Petitioner sign applications to return to Germany.  *Id.* ¶¶ 29–36.  In all these instances, there are no facts showing that the ICE officers provided Petitioner

with any notice or opportunity to raise a fear-based claim to the proposed third country.  Petitioner also alleges that on March 30, 2025, DHS issued a policy memorandum ("DHS Memo") that states that if the U.S. State Department receives credible diplomatic assurances from a third country that persons will not be persecuted or tortured, no further process is required.  *Id.* ¶ 63.  If no assurances are provided, then a notice of removal will be provided to the noncitizen detainee, who will receive a screening interview only if they affirmatively express a fear of removal.  *Id.*  Courts in this district, when ruling on temporary restraining orders, have found a likelihood of success on the merits for claims challenging third country removals, based on the DHS Memo policy changes.  *See Quijada*, 2026 WL 1182196 at *3, 8 (finding likelihood of success on the merits based on March 30, 2025 DHS memorandum policy changes which "materially alters" the process for third country removals); *Nadari v. Bondi*, No. 2:25-cv-07893-JLS-BFM, 2025 WL 2934514 at *3 (C.D. Cal. Sept. 3, 2025).

Therefore, based on the record in this case, the Court finds that the third country removal procedures are inadequate as applied to Petitioner because they fail to provide him with genuine notice and opportunity to raise a fear-based claim for a third country prior to removal.

Therefore, the Court grants Claim Four of the Petition.

## III.   Conclusion

The Petition is granted in part.  Claims One, Two and Four of the Petition are granted, and the Court orders forthwith release.  Because Claim Three also seeks release, the Court declines to address the merits and dismisses Claim Three without prejudice.

## IV.    Order

For the foregoing reasons, the Petition is GRANTED as to Claims One, Two, and Four.  The remaining claim for relief is dismissed without prejudice.

The Court ORDERS the following:

1. Respondents shall release Petitioner forthwith from detention, subject to the conditions of his prior order of supervision.

2. Respondents shall refrain from re-detaining Petitioner unless and until they follow the procedural safeguards set forth in 8 C.F.R. §§ 241.4 and 241.13.

3. Respondents shall not remove Petitioner to a third country without written notice to Petitioner and his counsel.  Following notice, Petitioner must be given a meaningful opportunity, and a minimum of ten (10) days to raise a fear-based claim for withholding of removal or protection under the Convention Against Torture prior to removal.  If Petitioner demonstrates "reasonable fear" of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings.  If Petitioner is not found to have demonstrated a "reasonable fear" of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days, for Petitioner to seek reopening of his immigration proceedings.

IT IS SO ORDERED.

DATED: May 1, 2026

Patricia Donahue

_____

Patricia Donahue
United States Magistrate Judge

14